**The court incorporates by reference in this paragraph and adopts as the findings and orders of this court the document set forth below. This document has been entered electronically in the record of the United States Bankruptcy Court for the Northern District of Ohio.**



Mary Ann Whipple
United States Bankruptcy Judge

**Dated: March 11 2015**

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| In Re: | ) | Case No. 14-30715 |
| | ) | |
| Lori D. Ryan, | ) | Chapter 7 |
| | ) | |
| Debtor. | ) | |
| | ) | JUDGE MARY ANN WHIPPLE |

### MEMORANDUM OF DECISION AND ORDER REGARDING MOTION TO DISMISS

This case is before the court on the United States Trustee's ("the UST") motion to dismiss Debtor's Chapter 7 case for abuse under 11 U.S.C. § 707(b)(1) and (3) [Doc. # 20] and Debtor's response [Doc. #34]. The court held a hearing on the motion that Debtor, her counsel and counsel for the UST attended in person and at which the parties presented testimony and other evidence in support of their respective positions.

The district court has jurisdiction over this Chapter 7 case pursuant to 28 U.S.C. § 1334(a) as a case under Title 11. It has been referred to this court by the district court under its general order of reference. 28 U.S.C. § 157(a); General Order 2012-7 of the United States District Court for the Northern District of Ohio. Proceedings to determine a motion to dismiss a case under § 707(b) are core proceedings that this court may hear and decide. 28 U.S.C. § 157(b)(1), (b)(2)(J) and (O).

Having considered the briefs and arguments of counsel and having reviewed the record in this case, for the reasons that follow, the court will grant the UST's motion and dismiss Debtor's Chapter 7 case unless she converts the case to Chapter 13.

**BACKGROUND**

Debtor is 47 years old and is single with no dependents. She is employed at JM Smucker Company, where she has worked for 17 years. She and her boyfriend, David Ross, who also works at JM Smucker Company, have shared the same home and living expenses for the past eight years.[1] They previously rented a home but, in an attempt to reduce living expenses, moved to a mobile home approximately two years ago. Debtor borrowed approximately $20,000 from her 401(k) plan in order to pay for the home and obtained the land on which it is situated in exchange for accepting responsibility for paying the delinquent real estate taxes owed on the property. Debtor owns the mobile home and the land on which it is situated free and clear except for the real estate taxes.

On March 10, 2014, Debtor filed a petition for relief under Chapter 7 of the Bankruptcy Code, stating that her debts are primarily consumer debts. Debtor's bankruptcy schedules show total unsecured nonpriority debt in the amount of $18,070.67 and total unsecured priority debt in the amount of $8,775.00. [UST Ex. 2, pp. 15-23]. Debtor's priority debt includes the delinquent real estate taxes in the amount of $2,775.00 and 2013 taxes owed to the Internal Revenue Service in the amount of $6,000.00. [*Id.* at 15-16]. Debtor's schedules also show total secured debt in the amount of $31,500, which, in addition to the debt owed by her on two vehicles, includes a mortgage debt of $11,500 owed jointly with Ross on a Las Vegas time share. The time share debt is the only joint debt owed, and both Debtor and Ross have stated intentions to surrender that property.

Debtor's Schedule I shows gross monthly income of $4,291.00 and payroll deductions in the amount of $2,432.66, which amount includes a $554.04 voluntary[2] contribution to her 401(k) plan and $177.12 in repayment of a 401(k) plan loan. [UST Ex. 2, pp. 26-27]. Thus, Schedule I shows that Debtor's net monthly income is $1,858.74. However, this amount appears to be understated. Debtor's prepetition pay advices show that she earns $24.95 per hour for an annual salary of $51,896.00, or $4,324 per month. [UST Ex. 3-2]. In addition, Debtor earns a shift differential of seventy cents per hour as well as overtime, which, in the first two months of 2014 totaled $2,984.19. [*See* UST Ex. 3-1]. While there was an increase in overtime early

---

[1] Ross is a debtor in a separately filed Chapter 7 case. [Case No. 14-30716]. The UST also filed a motion to dismiss for abuse under § 707(b)(1) and (3) in that case that was set for hearing on the same date as the hearing in this case. Because of the shared living arrangement and shared expenses that results in testimony and evidence relevant to both cases, the parties agreed to present one evidentiary record for both cases. The testimony at the hearing shows that the two debtors function and have long functioned as one household and an economic unit.

[2] The $554.04 retirement plan contribution is listed as a mandatory contribution on line 5b. of Debtor's Schedule I. [UST Ex. 2, p.27]. Debtor confirmed at the hearing, however, that the contribution is voluntary.

in the year due to the company putting out a new product, it continues to be offered and Debtor testified at the hearing that she most recently worked overtime the previous day. According to Debtor, she earns between $2,000 and $3,000 per year in overtime pay, which averages between approximately $167 and $250 per month. In addition, Ross contributes $800.00 per month towards expenses paid by Debtor. Although Schedule I requires inclusion of contributions from an unmarried partner to expenses listed on Schedule J, Ross's $800.00 contribution is not included. [*See* UST Ex. 2, p. 27]. Adjusting Debtor's monthly income after payroll expenses as reported on Schedule I to include minimal overtime and Ross's contribution, her monthly net income is approximately $2,825 ($1,858 + $167 + $800).

Debtor's Schedule J shows total monthly expenses in the amount of $2,899.00. [*Id.* at 28-29]. Although Debtor's Schedule J expenses include only $400 for electricity, she testified her home is totally electric and that her electric bills run as high as $600 during the winter months. Debtor's Schedule J expenses also include, among other things, $225 for delinquent property taxes, $400 for food, $200 for home maintenance and repair, $150 for clothing, laundry and dry cleaning, $300 for transportation, $100 for entertainment, $100 for pet care, and car payments in the amounts of $440 and $274 on two vehicles owned by her, one of which she testified is driven by Ross. [*Id.*]. Although her expenses also include $75 for car insurance, Ross testified that he pays the car insurance and has included such expense on Schedule J in his separately filed Chapter 7 case.

Other household expenses paid by Ross that are not included on Debtor's Schedule J include $300 for cell phones, $100 for cable television, an additional $600 for food, for a total household expense for food of $1,000, and an additional $400 for transportation, for a total household expense of $700 for transportation. As Debtor and Ross both work at JM Smucker Company, Debtor testified that they ride to work together during the winter. According to Debtor, her monthly expenses also include approximately $34 for current real estate taxes and $35 for homeowners insurance, neither of which are included on either her Schedule J or Ross's Schedule J. Adjusting her Schedule J expenses to include an additional $200 electricity expense and $69 for real estate taxes and homeowners insurance and to exclude the $75 car insurance expense, monthly expenses actually paid by Debtor total $3,093. With no other adjustments, Debtor has a monthly budget deficit of $268 ($2,824 - $3,093).

Debtor testified that the balance in her 401(k) plan account on the date of filing was $28,888 and that the 401(k) loan payments withheld from her pay are in payment of the approximately $20,000 that she borrowed to purchase and repair her mobile home. She further testified that, except for Social Security, she

has no other retirement benefit.

According to Debtor's Form B22A means test calculation,[3] she has above median income and no presumption of abuse arose under 11 U.S.C. § 707(b)(2). The UST filed a motion to dismiss for abuse and is proceeding only under § 707(b)(3).

## LAW AND ANALYSIS

Where debts are primarily consumer debts, as in this case, the court may, after notice and a hearing, dismiss a Chapter 7 petition "if it finds that the granting of relief would be an abuse of the provisions of [Chapter 7]." 11 U.S.C. § 707(b)(1). Under § 707(b)(3), in determining whether granting relief would be an abuse, the court is required to consider "(A) whether the debtor filed the petition in bad faith; or (B) the totality of the circumstances . . . of the debtor's financial situation demonstrates abuse." 11 U.S.C. § 707(b)(3)(A) and (B). This provision was added by Congress in 2005 as a part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005 ("BAPCPA").

Before BAPCPA, courts considered whether to dismiss a case for "substantial abuse" under § 707(b) based on the "totality of the circumstances." *See, e.g., In re Krohn*, 886 F.2d 123, 126 (6th Cir. 1989); *In re Price*, 353 F.3d 1135, 1139 (9th Cir. 2004). The Sixth Circuit explained that "substantial abuse" could be predicated upon either a lack of honesty or want of need, to be determined by the totality of the circumstances. *Krohn*, 886 F.2d at 126. Congress incorporated this judicially created construct in § 707(b)(3). Although pre-BAPCPA case law applying these concepts is still helpful in determining abuse under § 707(b)(3), under BAPCPA Congress has lowered the standard for dismissal in changing the test from "substantial abuse" to "abuse." *In re Mestemaker*, 359 B.R. 849, 856 (Bankr. N.D. Ohio 2007).

In this case, the UST does not argue that Debtor filed her petition in bad faith but instead contends that the totality of her financial circumstances demonstrates that she is not needy and that granting her a discharge would be an abuse of the provisions of Chapter 7. Debtors are "needy" when "[their] financial predicament warrants the discharge of [their] debts" in a Chapter 7 case. *Behlke v. Eisen (In re Behlke)*, 358 F.3d 429, 434 (6th Cir. 2004). Factors relevant to determining whether a debtor is "needy" include the ability to repay debts out of future earnings, which alone may be sufficient to warrant dismissal under some circumstances. *Krohn*, 886 F.2d at 126. Other factors include "whether the debtor enjoys a stable source of future income, whether he is eligible for adjustment of his debts through Chapter 13 of the Bankruptcy

---

[3]Effective December 1, 2014, Official Form B22A was changed. For cases filed on or after December 1, 2014, the Chapter 7 means test calculation would be set forth on new Official Forms B22A-1, B22A-1Supp, and B22A-2. Debtor's means test calculation is presented on Official Form B22A as in effect when she filed her petition. Fed. R. Bankr. P. 9009.

Code, whether there are state remedies with the potential to ease his financial predicament, the degree of relief obtainable through private negotiations, and whether his expenses can be reduced significantly without depriving him of adequate food, clothing, shelter and other necessities." *In re Bender*, 373 B.R. 25, 30 (Bankr. E.D. Mich. 2007); *In re Burge,* 377 B.R. 573, 577 (Bankr. N.D. Ohio 2007); *see Krohn*, 886 F.2d at 126. As the movant, the UST carries the overall burden of demonstrating, by a preponderance of the evidence, that Debtor's case should be dismissed. *In re Weixel*, 494 B.R. 895, 901 (B.A.P. 6th Cir. 2013).

In arguing that Debtor has the ability to pay a significant portion of her unsecured debt, the UST asserts that Debtor's Schedule I income is understated and that deductions from her income for a voluntary monthly 401(k) plan contribution and for repayment of a 401(k) plan loan should be considered income available to fund a Chapter 13 plan. The court agrees that Debtor's income as reported on Schedule I is understated. As discussed above, adjusting Debtor's income figures to include both the minimum amount of overtime pay that she testified she receives and Ross's contribution to expenses listed on her Schedule J, her monthly net income is approximately $2,825, rather than the $1,858 stated on Schedule I.

While the court finds Debtor's repayment of her 401(k) plan loan reasonable given her age, the balance in her account, and the tax consequences of failing to do so, the court nonetheless agrees that her voluntary monthly contribution of $554 to the plan should be considered income available to fund a Chapter 13 plan. In *Behlke,* the Sixth Circuit affirmed the bankruptcy court's decision dismissing a Chapter 7 case as substantial abuse of the provisions of that chapter, finding that the debtors' voluntary 401(k) contributions in the amount of $460 per month were not necessary for the maintenance and support of the debtors or their dependents and, therefore, should be included as disposable income for purposes of determining their ability to pay their creditors out of future earnings. *Behlke,* 358 F.3d at 435-36. In so finding, the court considered the fact that the debtors had accumulated retirement savings as well as other personal and real property of potentially significant future value. *Id.* at 436. In *In re Tucker*, 389 B.R. 535 (Bankr. N.D. Ohio 2008), this court addressed the precedent established by *Behlke* and concluded that it, as well as the plain language of § 707(b)(3), requires consideration of the totality of the debtor's individual circumstances in determining whether a debtor's 401(k) contributions are reasonably necessary. *See Tucker*, 389 B.R. at 540-41 (citing *In re Beckerman*, 381 B.R. 841, 848-49 (Bankr. E.D. Mich. 2008); *In re Gonzalez*, 378 B.R. 168, 174 (N.D. Ohio 2007)). Factors relevant to this determination include: (1) the debtor's age and time left until retirement; (2) the amount of the debtor's existing retirement savings; (3) level of yearly income; (4) overall budget; (5) amount of monthly contributions; (6) needs of any dependents; and (7) other constraints that

make it likely that retirement contributions are reasonably necessary expenses for this particular debtor. *Beckerman*, 381 B.R. at 848 (citing *Hebbring v. U.S. Trustee,* 463 F.3d 902, 907 (9th Cir. 2006), *N.Y. City Emp. Ret. Sys. v. Sapir (In re Taylor),* 243 F.3d 124, 129-30 (2d Cir. 2001)).

In this case, Debtor's income is above the median income. Although her accumulated retirement savings of $28,888 is modest, that balance will grow with her continued repayment of her 401(k) plan loan. Moreover, at forty-seven years of age, interrupting her retirement savings at this time will not result in an inability to provide for herself in retirement. Rather, Debtor would still have substantial time at the conclusion of a Chapter 13 plan to save for her retirement. The court is not aware of any other constraint that would make Debtor's retirement savings at this time reasonably necessary. Under these circumstances, the court agrees that her 401(k) contributions could be applied to repay unsecured debt rather than to fund her own retirement plan without depriving Debtor of any necessity. *See Behlke*, 358 F.3d at 435 (quoting *In re Jones*, 138 B.R. 536, 539 (Bankr. S.D. Ohio 1991) ("In these circumstances, 'it would be unfair to the creditors to allow the Debtors in the present case to commit part of their earnings to the payment of their own retirement fund while at the same time paying their creditors less than a 100% dividend.'")).

Debtor has stable employment, having worked for her employer for seventeen years. As an individual with regular, stable income, she is eligible for Chapter 13 should she choose to seek such relief as her debts are less than the statutory eligibility limits. *See* 11 U.S.C. §§ 109(e), 101(30). Debtor's total monthly income after payroll deductions, plus minimal overtime and Ross's contributions and excluding the $554 deduction for 401(k) contributions, is $3,379 ($2,825 + $554). Debtor's monthly expenses, as adjusted above, total $3,093, which yields monthly income after expenses of $286.

Debtor testified that she does not think she has room in her budget to reduce her expenses, and it is apparent to the court that she is likely subsidizing living expenses for her two adult daughters and five grandchildren. The court thus disagrees with Debtor's assessment on that point. But while the court believes that there is room for trimming of Debtor's household expenses, if she makes no other adjustments to her budget and applies this amount to fund a Chapter 13 plan over the sixty-month maximum plan duration for above-median income debtors, *see* 11 U.S.C. § 1322(d)(1), Debtor would have $17,160 to pay on her unsecured debt. However, in determining the total amount that will be available to pay both priority and nonpriority unsecured debt owed by Debtor, the court also considers the fact that Debtor's monthly expenses include a $225 payment on her $2,775 delinquent property tax debt, which is a priority tax debt that can be paid over sixty months in a Chapter 13 plan. Adding the $225 per month over sixty months, or $13,500,

to the $17,160 otherwise available, Debtor would have a total $30,660 available to fund a Chapter 13 plan and approximately $28,146 after payment of the Chapter 13 Trustee's administrative expenses. After payment of Debtor's priority debt, which totals $8,775, Debtor would have approximately $19,371 to pay on her remaining nonpriority unsecured debt. Under this scenario, unsecured creditors could receive full payment of the $18,070.67 owed by Debtor. *See In re Behlke*, 338 F.3d at 437 (finding *substantial* abuse where debtors had the ability to pay at least a 14% dividend to their unsecured creditors).

The availability of debtors' remedies under state law and the relief that might be afforded through private negotiations are other factors the Sixth Circuit has identified as relevant in deciding whether it would be an abuse to grant a Chapter 7 discharge in a particular case. Neither party has addressed these factors in this case. As the United States Trustee bears the burden of proof on the motion, *In re Wright*, 364 B.R. 640, 643 (Bankr. N. D. Ohio 2007), the court will assume that there are no such state law remedies or private negotiations that will assist in resolving Debtor's financial problems.

In conclusion, the court finds that Debtor has reasonably stable income and is able to pay a meaningful portion, if not all, of her unsecured debts out of her future income without Debtor or any dependent being deprived of adequate housing, food, clothing, or other necessities and that granting Debtor relief under Chapter 7 of the Bankruptcy Code would, therefore, be an abuse of the provisions of that chapter given the totality of her financial circumstances.

**THEREFORE**, for all of the foregoing reasons, good cause appearing,

**IT IS ORDERED** that Debtor is allowed thirty (30) days from the date of this order to file a motion to convert to a Chapter 13 case, absent which the United States Trustee's motion to dismiss [Doc. #20] will be granted, and this case will be dismissed, by separate order of the court, without further notice or opportunity for hearing.

###